UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHANNA HUFF <br><br> Plaintiff, <br><br> v. <br><br> DRESHER HILL HEALTH & REHABILITATION CENTER <br><br> Defendant | JURY DEMANDED <br><br><br> No. 2:21-CV-01773 |

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Incorporating the Memorandum of Law filed herewith, Plaintiff Shanna Huff hereby opposes Defendant Dresher Hill Health & Rehabilitation Center's Motion for Summary Judgment, and for the reasons set forth in Plaintiff's Memorandum of Law, respectfully request this Honorable Court deny the Defendant's Motion.

Date: November 3, 2022

RESPECTFULLY SUBMITTED:

LAW OFFICES OF ERIC A. SHORE, P.C.

BY:   /s/ Briana Lynn Pearson, Esquire
BRIANA LYNN PEARSON, ESQUIRE
(P.A. ID 327007)
Two Penn Center, Suite 1240
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
Telephone: 215-944-6113
Telefax: 215-627-9426
Email: brianap@ericshore.com
*Attorney for Plaintiff, Shanna Huff*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHANNA HUFF | |
| Plaintiff, | JURY DEMANDED |
| v. | |
| DRESHER HILL HEALTH & REHABILITATION CENTER | No. 2:21-CV-01773 |
| Defendant | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

I. **Introduction**

Defendants are not entitled to summary judgment because there are triable questions of material fact as to why Defendant terminated Plaintiff and as to whether Defendant's agent Gionna Banks defamed Plaintiff hindering Plaintiff from being able to mitigate her losses by obtaining a new job.

II. **Procedural Background and Facts**

On August 23, 2021, Plaintiff, Shanna Huff ("Plaintiff"), filed a six (6) count amended complaint against Defendant, Dresher Hill Health and Rehabilitation Center ("Dresher Hill" or "Defendant") alleging: (1) associational disability under the Americans with Disabilities Act (ADA); (2) interference and (3) retaliation under the Family and Medical Leave Act (FMLA); (4) interference and retaliation under the Families First Coronavirus Response Act (FFCRA); (5) violations of the Pa. Human Relations Act

(PHRA); and (6) defamation. See (Doc. 14), generally. Defendant filed its answer and affirmative defenses on September 7, 2021. See (Doc. 16). The matter proceeded through discovery and on October 20, 2022, Defendant filed a motion for summary judgment. See (Doc. 31). Accordingly, Plaintiff responds in opposition to Defendant's motion for summary judgment.

Plaintiff incorporates by reference Defendant's Statement of Undisputed Material Facts ("SUMF"), and all supporting exhibits. Plaintiff disputes two major material facts:

1. Whether Plaintiff was terminated because she sought to use intermittent FMLA to keep her disabled son that has sickle cell anemia safe; and
2. Whether Gionna Banks defamed Plaintiff to a potential employer.

### III. ARGUMENT

#### a. Standard of Review

Under Federal Rule of Civil Procedure (Rule) 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that are "material" that might affect the outcome of the case under governing law will properly preclude the entry of summary judgment. Id. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact ." Celotex Corp. v. Catrett, All U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse non-moving party's response must support the assertion that a fact is genuinely disputed by: "(A) citing to particular parts of materials in the record ...; or (B) showing that the materials cited [by the moving party] do not establish the absence or presence of a genuine dispute...." Rule 56(c)(1). Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

In considering entering an order based on a motion for summary judgment, federal courts view the underlying facts and all reasonable inferences there from in the light most favorable to the party opposing the motion. A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 580 (3d Cir.2003) (citing Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir.2002).

Defendant cannot demonstrate the lack of a material factual dispute in this case with respect to:

1. Whether Plaintiff was terminated because she sought to use intermittent FMLA to keep her disabled son that has sickle cell anemia safe; and

2. Whether Gionna Banks (an agent of Defendant) defamed Plaintiff to a potential employer.

### b. A Jury Could Reasonably Conclude That Gionna Banks defamed (an agent of Defendant) Defamed Plaintiff

In order to have a valid defamation claim in Pennsylvania the plaintiff must show:

> (1) the defamatory character of the communication;
>
> (2) Its publication by the defendant;
>
> (3) Its application to the plaintiff;
>
> (4) The understanding by the recipient of its defamatory meaning;
>
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff; and
>
> (6) Special harm resulting to the plaintiff from its publication.

42 Pa.C.S. § 8343 (bold in original).

Pennsylvania Courts have long held that "a communication may be considered defamatory if it tends to harm the reputation of another so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her." *Bell v. Mayview State Hosp.*, 853 A.2d 1058, 1062 (Pa.Super. 2004) (citation omitted). Further, in determining whether a statement is capable of defamatory meaning, a court must view the statement in context. See *Id*. "The nature of

the audience is a critical factor in determining whether a statement is capable of defamatory meaning." *Dougherty v. Boyertown Times*, 547 A.2d 778, 783 (Pa.Super. 1988) (some quotation omitted).

In the matter at bar on April 30, 2021, Brooke Glen (a potential new employer) made Plaintiff a conditional job offer pending the results of a background check. "Plaintiff accepted the offer." See Plaintiff's deposition, at P. 278, attached hereto as Exhibit A. Defendant's agent Gionna Banks falsely reported that Plaintiff was terminated for falsifying records. See Plaintiff's deposition, at P. 279, attached hereto as Exhibit A. Plaintiff contends publication of the defamatory statement was made by Defendant's agent Gionna Banks.

The defamatory statement clearly applied to Plaintiff, the recipient understood the defamatory meaning; the recipient understood the meaning of it was intended to be applied to Plaintiff; and Plaintiff suffered special harm because she lost the opportunity to earn income. Although, Defendant attempts to suggest that its agent did not defame Plaintiff Defendant it could not provide certainty that Plaintiff was not defamed by Gionna Banks because Gionna Banks separated from her employment before she was deposed and evaded being deposed. However, Plaintiff did produce some evidence that defendant intentionally gave Plaintiff an unfavorable reference. The unfavorable reference is attached hereto as Exhibit B. Accordingly, viewing these facts in a light most favorable to Plaintiff this issue should be decided by a jury.

### c. A Jury Could Reasonably Conclude That Defendant's Reason for Terminating Plaintiff was Pretextual or That Defendant had a Mixed Motive

While Plaintiff recognizes the nebulous nature of the distinction between a "mixed motive" and "pretext" claim under the ADA and FMLA, the Court need not wrestle with this enigmatic issue at this point because both issues should go to a jury. In *Egan v. Delaware River Port Authority*, a former employee alleged that he was terminated in retaliation for exercising his right to take intermittent FMLA leave for migraine headaches. *Egan v. Delaware River Port Auth.*, 851 F.3d 263, 272 (3d Cir. 2017). The employer countered that he was terminated (along with another employee) because his position was eliminated, and that his use of leave had nothing to do with that decision.

At trial, plaintiff did not present any direct evidence that his use of leave motivated the employer's termination decision. Nonetheless, at the close of trial, the plaintiff requested that a "mixed-motive instruction" be given to the jury. This instruction would allow the jury to find for the plaintiff if it determined the employer relied at all on an unlawful reason (i.e., plaintiff's use of leave) when making the termination decision — even if there was another, lawful reason for the decision. The district court refused to issue such an instruction because there was no direct evidence the employer's decision was motivated, even in part, by the plaintiff's use of leave. After the jury returned a verdict for the defense, the plaintiff appealed. The Third Circuit reversed. It held that a plaintiff "does not need to prove that invoking FMLA rights was the sole or most important factor" motivating the adverse action. The employee needs to

show only "that his or her use of FMLA leave was a 'negative factor' in the employer's adverse employment action."

The Court went on to hold that, to be entitled to the mixed-motive instruction, the plaintiff "was not required to produce direct evidence" that his use of leave was a negative factor. Instead, such an instruction was warranted if there was any evidence "from which a reasonable jury could conclude that … [the plaintiff's] use of FMLA leave was a negative factor in the employment decision" — even if that evidence was circumstantial. A parallel analysis should be used for Plaintiff's ADA claim.

In this case, although, Defendant claims Plaintiff was terminated for falsifying documents even Defense Counsel admitted that the "document [memorializing why Plaintiff was terminated] says [Defendant] informed her that due to her refusing to provide a statement, her termination [was] effective immediately.  It doesn't actually say that's the only reason she's being terminated." See Ryan Gallagher Deposition at P. 167 attached hereto as Exhibit C. If Defendant and Defendant's Counsel cannot agree on Defendant's reason for terminating Plaintiff a jury should decide whether Plaintiff's intermittent FMLA and her association with a disabled person were factors in Defendant's decision to terminate Plaintiff's employment.

## IV. CONCLUSION

For the reasons laid out herein Defendant's Motion for Summary Judgment should be denied.

Date: November 3, 2022       RESPECTFULLY SUBMITTED:

LAW OFFICES OF ERIC A. SHORE, P.C.

BY:     /s/ *Briana Lynn Pearson, Esquire*
BRIANA LYNN PEARSON, ESQUIRE
(P.A. ID 327007)
Two Penn Center, Suite 1240
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
Telephone: 215-944-6113
Telefax: 215-627-9426
Email: brianap@ericshore.com
*Attorney for Plaintiff, Shanna Huff*

# Exhibit A

Deposition of Shanna Huff — Shanna Huff vs. Dresher Hill Health & Rehabilitation Center

Page 278

Q. So you also said he got -- you know, things changed when you needed leave. You also hadn't been working from home at all previously either, right?
A. Correct.
Q. So that's also something different about how your work is and that you're working remotely, right?
A. Correct.
Q. Paragraph 41, in April or May 2021, you applied for a position as a mental health technician at Brooke Glen behavioral health; is that correct?
A. Yes.
Q. Paragraph 42, you interviewed for the position on April 30th -- sorry -- in April 2021. "On April 30, 2021, Brooke Glen made Huff a conditional job offer pending the results of a background check. Huff accepted the offer."
Did I read that correctly?
A. Correct.
Q. You authorized Brooke Glen to perform a background check of you, right?
A. Correct.
Q. And you understood what that would

Page 279

entail? That they were going to contact previous employers and stuff like that?
A. Yes.
Q. Next paragraph. "On May 27, 2021, and in response to Brooke Glen's inquiry as to Huff's employment background, Banks falsely reported that defendant terminated Huff's employment for falsification of records. Banks also falsely reported that defendant employed Huff from September 1, 2020, through October 2, 2020."
Did I read that correctly?
A. Yes.
Q. How do you know Gionna Banks said that?
A. Because when my offer was rescinded, I asked them what happened, and they told me exactly what happened and who to call. And when I spoke with them, they sent me a transcript of the call with Gionna Banks.
Q. You have a transcript of the call with Gionna Banks?
A. Yes.
Q. From PreCheck?
A. Yes.
Q. Have you produced that to your lawyer?
A. I believe so.

Page 280

Q. Do you have a transcript, or do you have the PreCheck report?
A. Well, pre- -- transcript of their conversation, PreCheck report, same thing.
Q. Well, it's -- I'm not trying to argue. Let me -- let me pull this up. I'm going to show you what's been previously marked as Exhibit 31.
A. Okay.
Q. Have you seen this document before?
A. Is that the first one or -- I mean, you're scrolling up and down too fast.
Q. I'm sorry. I'll go slower. You tell me how slow to go. For the record it's marked as P 68 to P 81. Have you seen the document before?
A. Yes.
Q. Okay. Is this the transcript you're referring to, or do you have another document?
A. Can you go down?
Q. Sure.
A. Can you make this -- when you get to employment history, can you make that a little bigger?
Q. Sure.
A. Stop right there. Yes, yes.
Q. So this is the document you're

Page 281

referring to when you say a transcript?
A. Yes.
Q. You don't have a recorded statement of whatever Gionna Banks allegedly said directly to PreCheck, this is just the report that you have?
A. Yes. That's what they sent me.
Q. Okay. And you received this in response to an inquiry about what was said at the background check?
A. Yes.
Q. But this document is not completed by Gionna Banks, right?
A. No. That's completed by PreCheck.
Q. Right. So the information contained in this document is information created -- a report created by PreCheck, right?
A. What do you mean?
Q. Meaning, this is PreCheck saying that Gionna Banks said something, right?
A. An employee of PreCheck you mean?
Q. An employee, yes, of PreCheck.
A. Yes. The person -- the person that verifies, yes.
Q. Well, let's look at that. So on the PreCheck report, it says -- you see me right here.

<a>
<b>
</b>
</a>



Exhibit B

**Background Profile**

| | |
|---|---|
| Report Date: | 06/01/2021 |
| Report No.: | 5797048 |
| Applicant: | Huff , Shanna Z |

### EMPLOYMENT HISTORY, CONT'D.

**Comments:**

[05/27/2021 08:09]: Human Resource records for the applicant are no longer available. -SRaub

There is no AKA associated with this verification. Source stated the individual was not temporary staff or consultant. Source stated personnel records are impacted by the following: Records Do Not Go Back To Employment Date. Records go back to: 01/2019

[05/26/2021 16:31]: Human Resource records for the applicant are no longer available. -pluker

05/26/21 10:43 am MST - I called 2158872300, Records could not be located for the individual. There is no AKA associated with this verification. Source stated the individual was not temporary staff or consultant. Source stated personnel records are impacted by the following: Records Do Not Go Back To Employment Date. Records go back to: 01/2019. Agent: Keri Schumacher.

Final Notes: There is no AKA associated with this verification. Source stated the individual was not temporary staff or consultant. Source stated personnel records are impacted by the following: Records Do Not Go Back To Employment Date. Records go back to: 01/2019

Reason for No Answer: Excessive hold time (more than 5 minutes)

05/25/21 05:46 am MST - I called 2158872300. An attempt to acquire Employment information has been made; however, there was no answer and no way to leave a message. Agent: Angela Guy.

Reason for verifier unavailable: Location is currently closed

05/25/21 05:11 am MST - We called 2158872300 and the verifier was unavailable. We were asked to call back on 05/25/2021, Verification information has been requested via voicemail. Response will be forwarded upon receipt. Agent: Elissa Curry.

**Status:** ALERT: Not Eligible for Rehire

| Per Applicant | | Per Employer | |
|---|---|---|---|
| Employer's Name: | Dresher Health and Rehab | Employer's Name: | Dresher Health and Rehab |
| Location: | 1390 Camp Hill Rd | Location: | 1390 Camp Hill Rd |
| Employer's Phone No: | (215) 641-0600 | Employer's Phone No: | (215) 641-0600 |
| Dates of Employment: | 01/01/2018  To:  04/01/2020 | Dates of Employment: | 09/01/2020  To:  10/02/2020 |
| Position Held: | Therapeutic Recreation Director /Payroll C | Position Held: | Activities Director |
| Department: | | Department: | |
| Type of Employment: | | Type of Employment: | N/A |
| Reason for Leaving: | Due to Covid | Eligible for Rehire: | |
| Last Wage: | | Reason for Leaving: | |
| | | Last Wage: | |
| | | Release Condition: | N/A |
| | | Person Contacted: | Gionna Banks |
| | | Contact Title: | HR Director |
| | | Investigator: | SJV |

Exhibit C

Ryan Gallagher

Page 167

1  want him to say yes or no to the question without
2  being able to provide the context.
3      Q.    Here's my issue, and maybe I'll just
4  explain it, and I need your help understanding
5  because I wasn't there. Okay? On April 29, 2020,
6  you testified that you hadn't made that decision to
7  terminate Ms. Huff, correct?
8      A.    Correct.
9      Q.    All right. You did make that decision
10 on April 30, 2020, correct? At least in this
11 statement, you explicitly say she's being terminated
12 for refusing to provide a statement, correct?
13     A.    Yes.
14     Q.    Okay. But you're also testifying, it's
15 not stated in this statement, that she was terminated
16 for falsifying documents, correct?
17          MS. MENICHINI: Object to the form.
18 That document says he informed her that due to her
19 refusing to provide a statement, her termination is
20 effective immediately. It doesn't actually say
21 that's the only reason she's being terminated.
22     Q.    Is there anything in this statement
23 regarding her falsifying documents or records?
24     A.    I also want to clarify, so my
25 response --

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SHANNA HUFF | |
| Plaintiff, | JURY DEMANDED |
| v. | |
| DRESHER HILL HEALTH & REHABILITATION CENTER | No. 2:21-CV-01773 |
| Defendant | |

## **ORDER**

AND NOW, this _____ day of _____, 2022, after consideration of the Defendants' Motion for Summary Judgment and Plaintiff's Response in Opposition thereto, it is hereby **ORDERED** and **DECREED** that Defendants' Motion is **DENIED**.

BY THE COURT:

_____